

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00492-CV

**IN THE INTEREST OF K.B.F.** and Z.A.R., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-02954
Honorable Richard Garcia, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  January 7, 2015

AFFIRMED

Appellant mother ("Mother") appeals the trial court's order terminating her rights to her children, K.B.F. and Z.A.R. The Texas Department of Family and Protective Services ("the Department") moved to terminate Mother's parental rights on numerous grounds. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(A)-(F), (I), (K), (N)-(P), (R) (West 2014). After a hearing, the trial court found Mother violated sections (E), (N), (O), and (R) of section 161.001(1) of the Texas Family Code.[1] *See id.* §§ 161.001(1)(E), (N), (O), (R) (West 2014). The trial court further found

---

[1] Section 161.001(E) provides that a parent's rights to the child may be terminated if the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E). Subsection (N) of section 161.001(1) provides for termination if the parent constructively abandons his or her child and that child has been in the permanent or temporary managing conservatorship of the Department for a certain period of time. *Id.* § 161.001(1)(N). A parent's rights may also be terminated, pursuant to subsection (O) if the parent fails to comply with a court order that establishes the actions the parent must take to obtain the return of a child in Department custody. *Id.* § 161.001(1)(O). Finally, subsection (R)

termination would be in the best interests of the children pursuant to section 161.001(2). *Id.* § 161.001(2). On appeal, Mother does not challenge the trial court's findings relative to the grounds for termination, but contends the evidence is legally and factually insufficient to support the trial court's: (1) finding that termination was in the children's best interests; and (2) appointment of the Department as managing conservator. We affirm the trial court's judgment.

### *Standard of Review*

Under the Texas Family Code, a court has authority to terminate a parent's rights to her children only upon proof by clear and convincing evidence that she committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), and that termination is in the best interests of the children. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard is mandated because a termination of parental rights causes permanent and unalterable changes for parent and child, thereby implicating due process. *E.A.G.*, 373 S.W.3d at 140. Accordingly, upon review of a trial court's termination order, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

---

permits a court to terminate parental rights if a parent has been the cause of a child being born addicted to alcohol or an illegal controlled substance. *Id.* § 161.001(1)(R).

In reviewing legal sufficiency of the evidence in termination cases, we view the evidence in the light most favorable to the trial court's finding and judgment, and any disputed facts are resolved in favor of that court's findings, if a reasonable fact finder could have so resolved them. *Id.* Additionally, we must disregard all evidence that a reasonable fact finder could have disbelieved, and we must consider undisputed evidence even if it is contrary to the trial court's findings. *Id.* In summary, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We may not, however, weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *Id.* at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

In a factual sufficiency review, we also give due deference to the findings of the trier of fact, refraining from substituting our judgment for the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### *Law on Best Interest*

Courts indulge in the strong presumption that maintaining the parent-child relationship is in a child's best interests. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). We also presume, however, that permanently placing a child in a safe place in a timely manner is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). Long ago, in *Holley v. Adams*, the Texas Supreme Court set forth considerations for appellate courts to take into account when reviewing a trial court's best interest determination: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical

danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976).

These considerations, commonly referred to as "the *Holley* factors," are not all-encompassing and a court does not have to find evidence of each and every factor before it terminates. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Thus, lack of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Additionally, although proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

### *Application*

Mother contends the evidence is legally and factually insufficient to establish termination is in the best interests of her children or to support the trial court's decision to appoint the Department as managing conservator. We disagree.

The record establishes the Department filed its original petition for protection in December 2012. Pursuant to an emergency order, the children were taken into custody. After a hearing, the Department was named temporary managing conservator of the children, and the parents were granted temporary possessory conservatorship. The Department created family service plans for the parents, and the trial court conducted the required status and permanency hearings.

Ultimately, a bench trial was held in June 2014. At the conclusion of the hearing, the trial court granted the Department's request for termination, terminating Mother's rights to both children, as well as the rights of the two fathers. The trial court also named the Department as the sole managing conservator. The trial court's decision was reduced to writing in an order of termination. Thereafter, Mother alone perfected an appeal.

At the bench trial, the Department called two witnesses — Monica Morones, the second caseworker assigned by the Department to Mother's case, and Alex Duran, the third caseworker assigned to the case. Ms. Morones testified she was the caseworker from July of 2013 through April of 2014. Ms. Morones stated that during her tenure on the case, she spoke with Mother about her service plan and the importance of completing it. According to Ms. Morones, Mother understood, but failed to complete the plan.

Ms. Morones testified Mother and the children came into contact with the Department because of Mother's drug use. Thus, one of the main goals of the plan was for Mother "to be able to live a drug-free life." However, during the short period of time Mother was out of the Bexar County Jail — December 2013 until February 2014 — Mother was never drug free and is currently incarcerated in the Mentally Impaired Offender Facility ("the MIOF unit") of the Bexar County Jail.

Ms. Morones stated she attempted to have Mother undergo a drug test when she was free from incarceration, but Mother declined, telling Ms. Morones "she would come out dirty." Mother admitted to Ms. Morones a drug test would show Mother had taken prescription drugs that were not prescribed to her. Mother was unable to visit her children when they were in Department custody because she never had a clean drug test.

Ms. Morones testified Mother's youngest child, Z.A.R., who was born in December 2012, tested positive at birth for cocaine and opiates. At the time of the birth, Mother tested positive for

those same substances, as well as barbiturates. Mother said her drug use was a mistake, claiming she wanted to stay clean to be with her children.

As to the children specifically, Ms. Morones testified that the older child, K.B.F., a boy, is five-years-old. He is currently living with his sister, Z.A.R., as well as two other siblings, at the home of their maternal grandmother, who has adopted some of Mother's other children.[2] According to Ms. Morones, K.B.F. is doing well and is surrounded by relatives who love him. Z.A.R. is also doing well now, having apparently suffered no ill effects from the drugs found in her system at birth.

Ms. Morones testified termination would be in the best interests of the children because Mother cannot provide safe and appropriate housing, nor can she give her children a proper lifestyle. Importantly, Mother has not shown an ability to change so that she can remain drug free. Mother is currently in the MIOF unit. Where the children are now, their needs are being met. Ms. Morones stated appointing Mother and the maternal grandmother as joint managing conservators, as requested by Mother, would not be in the children's best interests.

Admittedly, during her incarceration, Mother completed some parts of her service plan, including a substance abuse program and parenting classes. However, she never completed the drug assessment or sought individual counseling as required. Ms. Morones advised the trial court that she went over the service plan with Mother in detail in January 2014. Ms. Morones set appointments for Mother with the people she needed to see and explained the tasks Mother needed to complete, but Mother did not follow through.

The Department then called Alex Duran — Mother's third caseworker. Mr. Duran advised that he is the current caseworker and has been involved since April of 2014. Mr. Duran stated he

---

[2] When asked by the court how many children Mother currently has, Ms. Morones stated she believed Mother had a total of nine or ten children.

has had contact with Mother by phone on three occasions because she is confined to the MIOF unit. Mr. Duran testified Mother will remain in the MIOF unit for another 122 to 180 days.

During their conversations, Mother advised she was in compliance with her medication regime and engaging in individual and group therapy, substance abuse education, counseling, and parental education classes. However, Mother had not completed the services. According to Mr. Duran, based on his past experience, it was unlikely Mother would be able to timely demonstrate that she can lead a healthy, appropriate, drug-free lifestyle so as to ensure the safety and well-being of her children.

Mr. Duran testified termination was in the children's best interests because he has observed the children and their needs are being met, and they are not subject to risk now. The maternal grandmother is assisting the children in maintaining a relationship with each other, as well as other siblings. Mr. Duran also disagreed with the idea of appointing the maternal grandmother and Mother as joint managing conservators.

Mr. Duran described Mother's behavior through the case as repetitive — she engages and then disengages with regard to taking steps to regain custody of her children. Mr. Duran testified that although Mother is engaged at times, i.e., taking steps to regain custody, these periods seem to occur when she "is in a facility where she is not to — to be out of that environment, so it's kind of like these aren't free-will decisions." In other words, when Mother is incarcerated and has no choice, she takes the steps the Department has laid out for her. However, when she is free, she takes no such steps and reverts to her drug-using lifestyle.

After considering the evidence, the pertinent *Holley* factors, and the applicable standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination is in the best interests of the children and the appointment of the Department as managing conservator was appropriate. Clearly, at this time, with the Department as managing

conservator, the children's needs are being met. The Department has placed the children with their maternal grandmother, and she is providing a safe and caring environment for the children. She is also allowing them contact with other siblings. Mother has shown that unless confined, she is unwilling to take the steps necessary to provide a safe and appropriate environment for her children. By her own admission, during her release, which was less than three months, she was unable to remain drug free, admitting to the Department caseworker she would test "dirty" for prescription drugs that were not prescribed to her. There was no evidence from either side regarding the desires of the children, likely because their young ages and long absence from Mother preclude such evidence. There was also no evidence that the maternal grandmother desired custody. Rather, the evidence was that Mother desired a joint managing conservatorship with the maternal grandmother.

Accordingly, we hold that under the clear and convincing standard, the evidence is such that the trial court could reasonably have formed a firm belief or conviction that termination was in the best interests of the children and that appointing the Department as managing conservator was appropriate. *See In re J.P.B.*, 180 S.W.3d at 573.

### CONCLUSION

Based on the foregoing, we overrule Mother's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice